IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

NICHOLAS A. DAVIS,               )
                                 )
          Plaintiff,             )
                                 )
v.                               )        Case No. CIV-08-550-HE
                                 )
OKLAHOMA COUNTY, *et al.*,       )
                                 )
          Defendants.            )

## **REPORT AND RECOMMENDATION**

Mr. Nicholas Davis alleges a failure to provide protection from inmate assaults and deliberate indifference to serious medical needs. Defendants Oklahoma County, John Whetsel, and Brian Locke seek dismissal or summary judgment.[1]

---

[1]      The Defendants filed a motion for dismissal or summary judgment on August 7, 2008. *See* Pre-Answer of Defendant's Oklahoma County, John Whetsel, and Brian Locke's Motion to Dismiss/Motion for Summary Judgment & Brief in Support at pp. 17-18 (Aug. 7, 2008) ("Defendants' First Dispositive Motion"). Mr. Davis thereafter amended his complaint, and the Defendants filed a motion to dismiss.

On the issues involving exhaustion, limitations, and failure to provide protection, the movants incorporated all of the arguments and exhibits submitted with the first dispositive motion. *See* Defendant's, Oklahoma County, John Whetsel, & Brian Locke, Motion to Dismiss Amended Complaint & Brief in Support at pp. 3, 5, 9, 11 (Dec. 8, 2008) ("Defendants' Second Dispositive Motion"). As noted above, the first dispositive motion had included a request for summary judgment. *See supra* note 1.

In addition, on the issue of personal participation, Defendant Whetsel appears to seek dismissal or summary judgment in the alternative. For example, in his second motion to dismiss on the issue of personal participation, Mr. Whetsel relied on evidence outside of the second amended complaint. Defendants' Second Dispositive Motion at pp. 8-9. And he incorporated all of his "arguments, authorities, and documents" from the first dispositive motion. Defendants' Second Dispositive Motion at p. 2; *see supra* note 1. In the first dispositive motion, Mr. Whetsel had requested dismissal or summary judgment on the issue of personal participation. Defendants' First

Mr. Whetsel is entitled to summary judgment in his personal capacity.

The Court should dismiss all claims against Oklahoma County and Messrs. Whetsel and Locke in their official capacities.

On Mr. Davis' cause of action against Mr. Locke in his personal capacity, the Court should:

- reject the arguments for dismissal of the allegations involving inadequate protection based on failure to state a valid claim, frivolousness, and qualified immunity,

- grant dismissal, based on timeliness, of the claims involving assaults prior to September 24, 2006,

- reject the arguments for dismissal or summary judgment based on timeliness and nonexhaustion with respect to the failure to provide protection on September 24, 2006, and

- grant the argument for summary judgment with respect to the medical allegations based on nonexhaustion of available administrative remedies.

<u>STANDARD FOR DISMISSAL AND SUMMARY JUDGMENT</u>

In part, the Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6). Dismissal for failure to state a valid claim is proper only if the Plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine facial plausibility, the Court considers whether the plaintiff has pled enough "factual content" for a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citation

---

Dispositive Motion at p. 3.

omitted).  The well-pleaded factual allegations in the second amended complaint must be accepted as true and construed in the light most favorable to the Plaintiff.  *See Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990).  A *pro se* complaint like Mr. Davis' must be broadly construed under this standard.  *See Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).

One of the arguments for dismissal involves timeliness, which constitutes an affirmative defense.  *See* Fed. R. Civ. P. 8(c)(1).  Even though the issue involves an affirmative defense, the Plaintiff bears the burden to establish "a factual basis for tolling" "when the dates given in the complaint make clear that the right sued upon has been extinguished."  *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) (citations omitted).

The Defendants have also moved for summary judgment on particular issues.  *See supra* note 1.  For this part of the motion, the Defendants bear the burden.  *See Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 982 (10th Cir. 2002).  Summary judgment is necessary when "the pleadings, the discovery and disclosure materials on file, and any affidavits[2] show that there is no genuine issue as to any material fact and that the movant is

---

[2]     For purposes of summary judgment, the second amended complaint and the Plaintiff's response brief are treated as affidavits because they had been submitted under oath.  Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at p. 9 (Nov. 18, 2008) ("Second Amended Complaint"); Opposition to the Motion for Summary Judgment, Motion for Summary Judgment & Brief in Support at p. 21 (Dec. 31, 2008) ("Plaintiff's Response"); *see Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (*per curiam*) ("a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)" (citations omitted)); *Longstreth v. Maynard*, 961 F.2d 895, 902 (10th Cir. 1992) (stating that a prisoner's brief, verified under penalty of perjury, satisfied Fed. R. Civ. P. 56(e) for purposes of summary judgment).

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In making this determination, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party."  *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

The burden of persuasion falls on the Plaintiff for the elements of a *prima facie* case. *See Doe v. Bagan*, 41 F.3d 571, 573 (10th Cir. 1994) (stating that the plaintiffs bear the burden of proof on the essential elements of their case on a claim involving Section 1983). Thus, the Defendants need only produce affirmative evidence negating an essential element of the claim or show that the Plaintiff lacks evidence to carry his burden.  *See Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).   Once the Defendants satisfy their burden of production, the Plaintiff incurs a duty to present evidence creating "an inference of the existence of each element essential to the case with respect to which [he] has the burden of proof."  *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1243 (10th Cir. 2006) (citations omitted).  In the absence of such evidence, the Defendants would be entitled to summary judgment.  *See id.*

In part, Defendant Locke has sought summary judgment based on nonexhaustion of administrative remedies and expiration of the limitations period.[3]   These issues involve

---

[3]      The Defendants urged nonexhaustion and expiration of the limitations period in their second dispositive motion, which purported to be a motion to dismiss.  Defendants' Second Dispositive Motion at pp. 3-5.  But the Defendants incorporated their prior summary judgment motion on the issues involving exhaustion and timeliness.  *See supra* note 1.

affirmative defenses.[4]   For summary judgment on either defense, Mr. Locke "must demonstrate that no disputed material fact exists." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) (citations omitted).  If Mr. Locke meets this burden, the Plaintiff would incur a duty to "demonstrate with specificity the existence of a disputed material fact." *Id.* If the Plaintiff fails to satisfy this duty, Defendant Locke would be entitled to summary judgment on the affirmative defense of nonexhaustion or timeliness.  *See id.*

ALLEGATIONS AGAINST DEFENDANT
WHETSEL IN HIS INDIVIDUAL CAPACITY

In his individual capacity, Defendant Whetsel moves for dismissal or summary judgment based on a lack of personal participation. *See supra* note 1.  The Court should grant summary judgment to Mr. Whetsel on the issue involving his participation in the alleged constitutional violations.

Personal participation is necessary for individual liability under Section 1983.  *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim." (citations omitted)).  Sheriff Whetsel states under oath that he did not allow the inmate assault.  Defendants' First Dispositive Motion, Exh. 11 at p. 3.  In response, Mr. Davis provides no evidence that Defendant Whetsel had aided or participated in the assault.

---

[4]      *See supra* p. 3 (discussing timeliness as an affirmative defense); *Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding that nonexhaustion is an affirmative defense).

In some cases, personal participation may exist through conduct taken as a supervisor. *See*, *e.g.*, *Meade v. Grubbs*, 841 F.2d 1512, 1527-28 (10th Cir. 1988).  To prevail on this theory, Mr. Davis must identify "an 'affirmative link' between [Defendant Whetsel] and the [constitutional] violation, namely the active participation or acquiescence of [Defendant Whetsel] in the constitutional violation by [Officer Locke]." *Serna v. Colorado Department of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citations omitted).  Thus, the Plaintiff must base supervisory liability "'upon active unconstitutional behavior' and 'more than a mere right to control employees.'"[5]  The Supreme Court recently explained:

> In a § 1983 suit . . . - where masters do not answer for the torts of their servants - the term "supervisory liability" is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

*Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

Defendant Whetsel states in an affidavit that he "did not have any knowledge of" or "acquiesce in, any of the incidents related to a 9-24-06 incident involving Nicholas Davis." Defendants' First Dispositive Motion, Exh. 11 at p. 3.  In response, the Plaintiff alleges only that Defendant Whetsel had learned of the facts after the inmate assault.[6]  Knowledge

---

[5]     *Serna v. Colorado Department of Corrections*, 455 F.3d 1146, 1153 (10th Cir. 2006) (citation omitted).

[6]     Mr. Davis wrote to a county commissioner on October 14, 2006.  Defendants' First Dispositive Motion, Exh. 12 at pp. 8-9.  According to Mr. Davis, an investigation took place at some point thereafter and someone notified Mr. Whetsel of the inquiry.  *See* Plaintiff's Response at p. 9. The date of the notification is unstated, but Mr. Davis' chronology indicates that it took place after submission of the letter to the county commissioner on October 14, 2006.

gleaned after the beating could not have resulted in the assault.  Thus, Sheriff Whetsel is entitled to summary judgment in his individual capacity.

## ALLEGATIONS AGAINST OKLAHOMA COUNTY AND MESSRS. WHETSEL AND LOCKE IN THEIR OFFICIAL CAPACITIES

Oklahoma County joins Sheriff Whetsel and Mr. Locke, in their official capacities, in seeking dismissal based on the absence of a wrongful policy or custom.[7]  The Court should grant this part of the motion.

In part, Mr. Davis has sued Oklahoma County and Messrs. Whetsel and Locke in their official capacities.  *See* Second Amended Complaint at pp. 1-2.  These claims are in reality causes of action against the county,[8] and this entity cannot incur liability based solely on its employment of someone who has committed a constitutional violation.[9]  Instead, county liability arises only if the alleged wrongdoing had resulted from a county policy or custom.[10]

---

[7]      The Defendants contend that Mr. Locke could not incur "official liability," stating in part that he was not a "policymaker."  Defendants' Second Dispositive Motion at p. 6.  The Court can assume *arguendo* that Mr. Locke could be sued in an official capacity upon an appropriate showing of county liability.

[8]      *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (a suit against an officer in his official capacity is in essence a suit against the entity that the officer represents); *see also Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999) (stating that a suit against the sheriff in his official capacity was "the equivalent of a suit against" the county (citation omitted)).

[9]      *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("The County may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees." (citation omitted)).

[10]     *See Winters v. Board of County Commissioners*, 4 F.3d 848, 855 (10th Cir. 1993) ("in order for the County . . . to be liable under § 1983 the constitutional violation must be a result of a government custom or policy" (citation omitted)).

"When a policy is not unconstitutional in itself, the county cannot be held liable solely on a showing of a single incident of unconstitutional activity." *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) (citation omitted).

The Defendants argue that the Plaintiff has not alleged any facts suggesting a wrongful county custom or policy. Defendants' Second Dispositive Motion at pp. 6-7. In response, the Plaintiff argues that some policies had not worked and that Defendant Locke's actions had violated governing policies. Plaintiff's Response at pp. 8, 11. These arguments are invalid as a basis for county liability.

Even if some policies did not work, the failure would not suggest a constitutional infirmity in the policies themselves. And if Officer Locke was acting contrary to policy, the policy could not be to blame for the alleged constitutional violation. Consequently, the Court should dismiss the claims against Oklahoma County and Defendants Whetsel and Locke in their official capacities.[11]

---

[11]    In both dispositive motions, the Defendants broadly seek dismissal of the requests for punitive damages, stating that they are not available in suits involving governmental entities. Defendants' First Dispositive Motion at p. 21; Defendants' Second Dispositive Motion at p. 13. As discussed in the text, the Court should dismiss all claims against Oklahoma County, Sheriff Whetsel, and Mr. Locke in his official capacity. *See supra* pp. 5-8. But punitive damages could be available in a claim against Mr. Locke in his personal capacity. *See New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 122 (2d Cir. 2006) ("Although a municipality itself is immune from a claim for punitive damages, that immunity does not extend to a municipal official sued in his individual capacity."(citations omitted)); *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991) ("Punitive damages . . . are recoverable against a governmental official acting in his individual capacity"); *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1047 (11th Cir. 2008) ("In a § 1983 action, punitive damages are only available from government officials when they are sued in their individual capacities." (citations omitted)); *see also Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989) (*dicta*) ("a judgment against a public servant in his individual capacity exposes him or her to . . . punitive damages" (citation omitted)).

PERSONAL CAPACITY CLAIM AGAINST BRIAN LOCKE
FOR FAILURE TO PROVIDE PROTECTION

In part, the personal capacity claims against Mr. Locke stem from four altercations. *See infra* p. 20. Of these claims, only those involving the beating on September 24, 2006, should survive the dispositive motion.

I.      Failure to Allege an Eighth Amendment Violation

Mr. Davis blames the Defendants for four altercations. *See infra* p. 20. Mr. Locke is identified as a collaborator in the fourth incident, which took place on September 24, 2006. On that date, Mr. Davis was allegedly beaten by three inmates with a trash can and a broken broom stick. *See* Second Amended Complaint at p. 2. According to the Plaintiff, Officer Locke let the inmates out of their cells and stood idly by and watched the attack. *See id.* at pp. 2, 5. Mr. Locke moves for dismissal of the claim with respect to the assault on September 24, 2006, arguing that Mr. Davis' allegation fails to allege the elements of an Eighth Amendment violation and is frivolous. Defendants' First Dispositive Motion at pp. 7-8, 23; Defendants' Second Dispositive Motion at pp. 5-6, 9-10, 13. The Court should reject Mr. Locke's arguments for dismissal of the claim.

A.      Standard Under the Eighth Amendment

Under the Eighth Amendment, prison officials must "tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)

9

(citation omitted).  For liability under the Eighth Amendment, a plaintiff must satisfy two requirements, consisting of an objective and subjective component.

The objective component requires that the alleged deprivation be "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  This component "'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'"  *Rhodes v. Chapman*, 452 U. S. 337, 346 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

The subjective component requires prison officials to have a "sufficiently culpable state of mind."  *Wilson v. Seiter*, 501 U.S. at 297.  Culpability occurs when prison officials act with deliberate indifference to a substantial risk of serious harm for an inmate.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "Deliberate indifference" exists when the official draws an inference of "a substantial risk of serious harm."  *Id.* at 837.

B.    Alleged Failure to State a Valid Claim

Defendant Locke does not dispute that three inmates had assaulted Mr. Davis while he was housed at the Oklahoma County Detention Center.  However, Officer Locke argues that Mr. Davis' allegations do not satisfy the objective and subjective elements under the Eighth Amendment.  Defendants' First Dispositive Motion at pp. 11-12; Defendants' Second Dispositive Motion at pp. 9-10.  Mr. Locke is incorrect.

<u>The Objective Component</u>

According to Mr. Locke, Mr. Davis' acknowledgment that he had been "flagged" for separation from certain other inmates proves the taking of "steps . . . to prevent the harm." Defendants' Second Dispositive Motion at p. 10.   This argument ignores Mr. Davis' allegation that Officer Locke had intentionally disregarded the directive for separation by freeing the three other inmates to commit the assault. *See infra* pp. 11-12.  In light of this allegation, Officer Locke cannot avoid liability based solely on the efforts of other officials to separate Mr. Davis from other inmates.

<u>Subjective Component</u>

Defendant Locke further seeks dismissal on grounds that the Plaintiff failed to allege intentional disregard for his safety. Defendants' Second Dispositive Motion at p. 10.  Again, this argument disregards Mr. Davis' description of the events.[12]

The Plaintiff stated under oath in the second amended complaint:

> Officer Locke open [sic] their cell doors, both inmates walked in their cell, but walked back out and started to walk around the dayroom . . . .   The third inmate . . . went back to Locke and I over heard [the inmate] tell Locke he wouldn't get into any trouble. . . .  [One of the inmates] walked up to me started to hit me and all three inmates started to beat me.  I was kick [sic] and hit with a trash can.  At some point some one hit me with a broomstick across the face and a moment later some one hit me across the head with a broomstick, I thought I would die. . . .  One by one they started to walk

---

[12]     The Defendants elsewhere recognize that Mr. Davis is making a claim that Mr. Locke had intentionally aided in the inmate assault. *See* Defendants' Second Dispositive Motion at p. 13 ("Plaintiff claims, in his Complaint, that Locke assisted other inmates in the assault and battery against him.").

11

away. . . .  I heard Locke tell [the inmate], "you said you was going to stop when I tell you to," [and the inmate] stated back, "you shouldn't let me out."

Second Amended Complaint at pp. 5, 9.  This allegation suggests that Officer Locke had intentionally allowed inmates to assault the Plaintiff and stated a valid cause of action for deliberate indifference to safety.[13]

### Summary

Mr. Davis has stated a valid claim for violation of the Eighth Amendment, and the Court should reject the argument for dismissal.

II.    Frivolousness

Defendant Locke also seeks dismissal on grounds of frivolousness.  *See supra* p. 9. According to Mr. Locke, he was not mentioned by Mr. Davis in previous interviews about the altercation on September 24, 2006.  Thus, according to Mr. Locke, the allegation about his involvement constitutes an obvious fabrication.  Defendants' Second Dispositive Motion at p. 13.

"The term 'frivolous' refers to 'the inarguable legal conclusion' and 'the fanciful factual allegation.'"  *Hall v. Bellmon*, 935 F.2d 1106, 1108 (10th Cir. 1991) (citation

---

[13]    *See Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (an inmate's allegation of a prison guard's incitement of other inmates to commit a physical assault stated a valid claim under the Eighth Amendment); *Young v. Garfield County*, 2008 WL 4525469, Westlaw op. at 3 (W.D. Okla. Sept. 30, 2008) (DeGiusti, J.) (holding that the inmate-plaintiff's account, involving a jailer's opening of an assailant's cell, precluded summary judgment on a constitutional claim for failure to provide protection), *appeal dismissed*, Case No. 08-6237, slip op. (10th Cir. June 11, 2009) (unpublished op.); *accord Newman v. Holmes*, 122 F.3d 650, 653 (8th Cir. 1997) ("if [a corrections officer] had opened [a prisoner's] cell door knowing that harm to other inmates would almost certainly result, [the officer's] conduct would constitute deliberate indifference").

omitted).  But a claim is not "frivolous" simply because the Court "finds the Plaintiff's allegations unlikely."  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  If the Plaintiff's allegation is "plausible," it cannot be considered "frivolous" even in the absence of evidentiary support.[14]  Mr. Davis' factual allegations against Mr. Locke do not involve unsupportable legal conclusions or fanciful scenarios.

The Defendant's argument is based solely on the purported failure of Mr. Davis to mention Mr. Locke's involvement:  (1) during two interviews after the assault, and (2) in a letter to a county commissioner.  Defendants' First Dispositive Motion at p. 23; Defendants' Second Dispositive Motion at p. 27.  At most, reports of the interview and the letter to the county commissioner might present material for impeachment of the Plaintiff if he were to testify at trial.  Even this purpose, however, would be limited.

The two interviews were summarized in a report prepared by an investigator, M. Johns.  Defendants' First Dispositive Motion, Exh. 12 at pp. 10-14.  This report was not authenticated[15] and apparently reflects only the answers to unspecified questions that M. Johns had posed to Mr. Davis.  Even in Mr. Johns' report, however, the Plaintiff's version

---

[14]  *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) ("A plausible factual allegation, even if it lacks evidentiary support, is not 'frivolous' as contemplated by [the predecessor statute to Section 1915(e)(2)(B)(i)], even though it may not survive a motion for summary judgment."); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) ("Plausible factual allegations are not frivolous under section 1915(d) even if they lack evidentiary support." (citations omitted)).

[15]  *See* Defendants' First Dispositive Motion, Exh. 12 at pp. 10-14; *see also* Fed. R. Civ. P. 56(e)(1) ("If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.").

13

is supported.  For example, the report notes Mr. Davis' statement that as he was being hit, "the officer did not do anything."  *Id.* at p. 10.

In the letter to the county commissioner, Mr. Davis also complains that an officer "was standing right there," but "did not stop [the assailants] or spray them or anything."  *Id.* at p. 8.

Although Mr. Davis did not mention Mr. Locke by name, the interviews with the investigator and the letter to the county commissioner refer to an officer's failure to stop the attack as he stood and watched.  *See supra* pp. 13-14.  These statements resemble the allegation in the second amended complaint, where Mr. Davis alleged that Mr. Locke had failed to take any action during the beating.  Second Amended Complaint at p. 5.[16]

Perhaps Mr. Davis could face questioning at trial about why he allegedly failed to mention some of the details now alleged against Mr. Locke.  But the possibility of impeachment material would not render Mr. Davis' current allegations as "frivolous."  *See Cay v. Estelle*, 789 F.2d 318, 326-27 (5th Cir. 1986) (holding that an inconsistency in two inmates' versions regarding a physical assault did not render the inmate's claim "frivolous").[17]

---

[16]     Mr. Locke apparently submitted a report, acknowledging his presence during part of the altercation.  Defendants' First Dispositive Motion, Exh. 12 at p. 44.

[17]     The Fifth Circuit Court of Appeals has held that an unrelated part of *Cay v. Estelle* was implicitly overruled by the Supreme Court's decision in *Neitzke v. Williams*, 490 U.S. 319 (1989). *Pugh v. Parish of St. Tammany*, 875 F.2d 436, 438 (5th Cir. 1989).

III.   Nonexhaustion of Administrative Remedies

     Mr. Locke also seeks dismissal or summary judgment on grounds that the Plaintiff has not exhausted available administrative remedies with respect to claims arising out of the inmate assault on September 24, 2006.  *See supra* note 1.  This argument should be rejected.

    A.    The Exhaustion Requirement

     Federal law provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2000).  This law "requires proper exhaustion" of the prison's administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

    B.    The Administrative Process

     The relevant events took place at the Oklahoma County Detention Center, which employs an administrative process.  First, an inmate should attempt to informally resolve the claim with a staff member.  *See* Defendants' First Dispositive Motion, Exh. 5 at p. 2.  If this attempt is unsuccessful, the inmate can file an informal request to staff.  *See id.*  If the inmate is not satisfied with the response, he may file a grievance within fifteen days of the incident or the response to the request to staff.  *See id.* at p. 2; Defendant's, Oklahoma County, John Whetsel, & Brian Locke, Supplement to Doc. 13-8, Exh. at p. 2 (Feb. 23, 2009).  If the inmate remains dissatisfied, he can appeal to the Jail Administrator within ten days of an

adverse ruling.   *See* Defendant's, Oklahoma County, John Whetsel, & Brian Locke, Supplement to Doc. 13-8, Exh. at p. 2 (Feb. 23, 2009).

   C. Claim Concerning Deliberate Indifference to an Inmate Assault on September 24, 2006

  On the claim involving deliberate indifference to an inmate assault on September 24, 2006, Mr. Davis alleges that he had unsuccessfully attempted oral resolution with "Lt. Finley."   *See* Second Amended Complaint at p. 8.   He then filed a request to staff with "Major Urange," but received no answer.   *See id.* at pp. 6, 8.   Mr. Davis states that he then filed a grievance, but received no answer.   *See id.*   Finally, the Plaintiff alleges that he filed a request to staff to "Captain Carson," complaining about the lack of responses on his prior complaints.   *See id.*

  In the first dispositive motion, Mr. Locke argued:

- The two requests to staff did not provide notice of an intent to complain about his conduct and

- the Plaintiff did not submit any grievances related to the assault.

Defendants' First Dispositive Motion at pp. 16-21.   The two arguments do not entitle Mr. Locke to dismissal or summary judgment.

<u>Impact of Nonexhaustion as an Affirmative Defense</u>

Because nonexhaustion is an affirmative defense,[18] Mr. Davis had no obligation to "plead or demonstrate exhaustion" in the second amended complaint.[19]

<u>The Sufficiency of Two of the Three Requests to Staff</u>

Notwithstanding the absence of a duty to plead exhaustion, Mr. Davis alleged in the second amended complaint that he had orally complained to Lt. Finley "about the inmates and officers." Second Amended Complaint at p. 8. When Lt. Finley defended the officers, Mr. Davis allegedly submitted a request to staff and grievance, carrying out these parts of the administrative policy. *Id.* These allegations, if believed, would suggest that Mr. Davis had exhausted administrative remedies. As a result, the Court cannot rely on the exhaustion defense to dismiss the claim involving Mr. Locke's role in the inmate assault on September 24, 2006.

Summary judgment on the claim is also unavailable because the exhaustion defense turns on classic factual disputes.

The Defendants point to two identical requests to staff, submitted on November 15, 2006. *See supra* p. 16. The two requests to staff stated: "I turned in a request to staff and a grievance to the 12th Floor Lt. concerning three I/M's that assaulted me and I have not recieved [sic] no response. Also, I sent a copy to Major Uranga." Defendants' First

---

[18]     *See supra* pp. 4-5.

[19]     *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1161 n.1 (10th Cir. 2007) (citation omitted).

Dispositive Motion, Exh. 2.  The Defendants correctly argue that the two requests to staff did not alert officials to a claim that Mr. Locke had intentionally opened another cell to permit the inmates to attack Mr. Davis.  *See Kikumura v. Osagie*, 461 F.3d 1269, 1282-85 (10th Cir. 2006) (stating that exhaustion requires the prisoner to supply enough information for internal investigation of the complaint).  However, these documents had not been submitted for this purpose.  Instead, Mr. Davis had presented the documents to support his contention that he had previously submitted a request to staff on the claim involving a failure to provide protection.  Mr. Locke ignores this contention and, as a result, has not questioned the sufficiency of the missing request to staff.

The result is that the Court has evidence of three requests to staff and no evidence, pointing in either direction, regarding the sufficiency of the first one.  Mr. Locke's argument on the second and third requests to staff is immaterial without a challenge to the first one. Because exhaustion is an affirmative defense,[20] Mr. Locke cannot obtain summary judgment based on his challenge to two out of Mr. Davis' three requests to staff.

<u>The Existence of a Grievance Concerning the Assault</u>

Mr. Locke also urges nonexhaustion based on the absence of a grievance concerning collaboration in the attack.  *See supra* p. 16.  This argument is invalid.

---

[20]     *See supra* pp. 4-5.

The Defendant's argument is based on a sworn statement denying any grievances concerning the alleged inmate assault.[21]  *See* Defendants' First Dispositive Motion, Exh. 5 at p. 2.  But the Plaintiff has presented contrary evidence.  For example, in the second amended complaint, Mr. Davis stated under oath that he had submitted a "Grievence [sic] around about 10-12-06 or 10-15-06."  Second Amended Complaint at pp. 6, 9; *see also supra* note 2 (discussing treatment of the second amended complaint as an affidavit).  And in a response brief, the Plaintiff stated under oath that he had submitted a grievance regarding the inmate assault.  Plaintiff's Response at pp. 5, 19; *see also supra* note 2 (discussing treatment of the Plaintiff's response brief as an affidavit).

The parties' conflicting evidence leaves material facts in dispute, and the Court cannot resolve this swearing match on a motion for summary judgment.[22]  Construed in a light favorable to Mr. Davis, the evidence could lead the fact-finder to conclude that administrative remedies had become unavailable when jail officials refused to respond to the grievance.[23]  Consequently, the Court should reject the Defendant's argument for summary

---

[21]    Mr. Todd states that he has reviewed Mr. Davis' file, which is said to contain all "Request to Staff forms, and Inmate Grievance Forms."  Defendants' First Dispositive Motion, Exh. 5 at p. 2.  But the Plaintiff states under oath that he filed a grievance on the events leading to the assault.  Plaintiff's Response at pp. 3, 19.

[22]    *See, e.g.*, *Baughman v. Harless*, 142 Fed. Appx. 354, 360 (10th Cir. Aug. 2, 2005) (unpublished op.) (reversing an award of summary judgment to the defendants "[b]ecause there is a genuine issue of material fact whether [the prisoner] exhausted his available administrative remedies").

[23]    *See Whitington v. Ortiz*, 472 F.3d 804, 807-808 (10th Cir. 2007) ("when prison officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the [Prison Litigation Reform Act]" (citations omitted)); *see also Jernigan v. Stuchell*, 304

judgment based on a failure to exhaust the claim concerning an inmate assault on September 24, 2006.

IV.     Expiration of the Limitations Period

Mr. Davis alleges inmate assaults on:

- October 26, 2004,

- February 20, 2005,

- December 16, 2005, and

- September 24, 2006.

Second Amended Complaint at p. 5.  The Defendants seek dismissal or summary judgment on the Plaintiff's claim involving these assaults based on expiration of the statute of limitations.  *See supra* note 1.[24]  The Court should grant the motion to dismiss concerning the alleged assaults on October 26, 2004, February 20, 2005, and December 16, 2005.  For the alleged altercation on September 24, 2006, however, the Court should reject Mr. Locke's argument for dismissal or summary judgment on grounds of timeliness.

---

F.3d 1030, 1032 (10th Cir. 2002) (*dicta*) ("we agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable" (citations omitted)).

[24]     As noted above, this contention involves an affirmative defense.  *See supra* pp. 3-5.  But the Court can consider this argument on a motion to defense when the complaint reflects "noncompliance with the limitations period."  *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311 n.3 (10th Cir. 1999) (citations omitted), *overruled in part on other grounds*, *Boyer v. Cordant Technologies, Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003); *see also Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) ("Statute of limitations questions may . . . be appropriately resolved on a Fed.R.Civ.P. 12(b) motion." (citation omitted)).

A.      The Applicable Period of Limitations

The threshold issue is whether the period of limitations is one year or two years.  Mr. Locke argues that the limitations period is only one year, but he is incorrect.

The Defendant classifies the Plaintiff's allegation as one for "assault and battery" "[u]nder Oklahoma law" and points out that the statute of limitations in Oklahoma is only one year for this type of claim.  Defendants' First Dispositive Motion at pp. 17-18.  But Mr. Davis did not bring a claim for assault and battery under Oklahoma law.  Instead, the Plaintiff sued under 42 U.S.C. § 1983 for violation of the Eighth Amendment.  *See* Second Amended Complaint at pp. 2, 4.

In Section 1983 actions, the Court must apply the state's residual or general limitations period for personal injury actions.[25]  In Oklahoma, this period is two years.  *See* Okla. Stat. tit. 12 § 95(A)(3).

A similar issue arose in *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988).  There a detainee alleged physical violence by sheriffs and sued under Section 1983.  *See Meade v. Grubbs*, 841 F.2d at 1517.  The defendants urged application of Oklahoma's one-year limitations period for claims involving assault and battery.  *See id.* at 1522 (citing Okla. Stat. Ann. tit. 12 § 95(4) (1987 supp.)).  The Tenth Circuit Court of Appeals rejected the argument, applying Oklahoma's two-year period of limitations for "injury to the rights of

---

[25]      *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (holding "that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions" (footnote omitted)).

another, not arising on contract, and not hereinafter enumerated." *Id.* at 1524; *see* Okla. Stat. tit. 12 § 95(A)(3).   Under *Meade v. Grubbs*, the Court should apply Oklahoma's two-year period for personal injury actions rather than the one-year provision for assault and battery claims.

B.   Claim Involving the Alleged Assault on September 24, 2006

As noted above, one of the alleged assaults took place on September 24, 2006. *See supra* p. 20.   For injuries stemming from this assault, the two-year period of limitations would have ended on September 24, 2008.   *See supra* pp. 21-22.   The second amended complaint was filed on November 18, 2008, after expiration of the two-year period.   But Mr. Davis had filed the original complaint on May 22, 2008.

The second amended complaint "relates back" to May 22, 2008, as long as the claim arose out of the conduct set out in the original complaint. *See* Fed. R. Civ. P. 15(c)(1)(B). In the original complaint, Mr. Davis had sued Oklahoma County, John Whetsel, and Brian Locke for failure to provide protection and a resulting assault by three other inmates on September 24, 2006.   Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at pp. 1-2, 4-6 (May 22, 2008).

As discussed above, the same alleged conduct gave rise to one of the claims in the second amended complaint against Oklahoma County, Mr. Whetsel, and Mr. Locke. *See supra* p. 20.   Thus, the claim in the second amended complaint concerning an assault on September 24, 2006, relates back to the filing of the original complaint on May 22, 2008.

That version of the complaint had been filed roughly four months before the end of the two-year period of limitations.  As a result, the Court should overrule the Defendants' argument for dismissal or summary judgment on the timeliness of the personal capacity claim against Mr. Locke for his role in the inmate assault on September 24, 2006.

C.    Claims Based on the Alleged Assaults Prior to September 24, 2006

As noted above, the Plaintiff has also asserted claims based on three alleged assaults taking place between October 26, 2004, and December 16, 2005.  *See supra* p. 20.  The three assaults were not mentioned in the original or first amended complaints.  But the three altercations are discussed in the second amended complaint.  *See supra* p. 20.  The Court may assume *arguendo* that claims involving the three assaults relate back to the filing of the original complaint.  *See supra* p. 22 (citing Fed. R. Civ. P. 15(c)(1)(B)).  Even with this assumption, however, claims concerning the three assaults would be time-barred because they preceded the original complaint by more than two years.  *See supra* pp. 21-22.  Accordingly, the Court should dismiss the claims against Mr. Locke for the alleged assaults on October 26, 2004, February 20, 2005, and December 16, 2005.[26]

---

[26]    In connection with the claim involving the assault on September 24, 2006, Mr. Davis asserts that the claim did not accrue until he discovered the extent of his injuries.  Plaintiff's Response at p. 19.  As discussed above, however, the claim involving the beating on September 24, 2006, would be timely without consideration of this argument.  *See supra* pp. 22-23.  The same is not true of the claims involving the alleged altercations prior to September 24, 2006.  *See supra* p. 23.  For these claims, the limitations period would have begun regardless of when Mr. Davis learned the extent of his injuries.  *See Gustavson v. United States*, 655 F.2d 1034, 1036 (10th Cir. 1981) ("Lack of knowledge of the injury's permanence, extent, and ramifications does not toll the statute [of limitations]." (citation omitted)); *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) ("A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run." (citations & footnote omitted)); *Kang v.*

V.     Qualified Immunity

Defendant Locke also invokes qualified immunity as a basis to dismiss the Plaintiff's claim involving an inmate assault on September 24, 2006.  Defendants' Second Dispositive Motion at pp. 13-14.  The Court should reject this argument for dismissal.

In light of the assertion of qualified immunity, Mr. Davis must identify a specific constitutional right and show that it had been "clearly established" before the alleged misconduct.  *See Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (citation omitted).

The Plaintiff has met his burden to withstand dismissal on grounds of qualified immunity.

First, Mr. Davis has identified a constitutional prohibition against cruel and unusual punishment through deliberate indifference to his safety.  *See* Second Amended Complaint at pp. 2, 4-5.  And in invoking this constitutional prohibition, the Plaintiff has alleged the elements of a cause of action based on Mr. Locke's role in the assault on September 24, 2006.  *See supra* pp. 9-12.

───────────────

*Kang*, 11 P.3d 218, 219 (Okla. Civ. App. 2000) ("The statute of limitations on Plaintiff's assault and battery claim against Defendant was not tolled because Plaintiff allegedly did not know the full extent of her injury but did know she had been injured and that Defendant had caused it.").

Second, before the alleged beating on September 24, 2006, the Supreme Court had held:

> [A]s the lower courts have uniformly held, and as we have assumed, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." . . . Prison conditions may be "restrictive and even harsh," but gratuitously allowing the beating . . . of one prisoner by another serves no "legitimate penological objectiv[e]."

*Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted).[27]

In light of this pre-existing law, Mr. Davis has stated a valid claim that Defendant Locke knew that he was violating clearly established constitutional rights. Consequently, Defendant Locke is not entitled to dismissal on grounds of qualified immunity.

## PERSONAL CAPACITY CLAIM AGAINST BRIAN LOCKE
## FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

In part, Mr. Davis appears to include Mr. Locke in the claim involving inadequate medical attention.[28] But the failure to exhaust administrative remedies entitles Mr. Locke to summary judgment on the claim.

The Plaintiff raises two claims concerning the alleged lack of medical care. One encompasses a lack of stitches for an open wound immediately following the inmate assault.

---

[27]    *See Sims v. Schaad*, 185 F.3d 875, 1999 WL 387158, Westlaw op. at 2 (10th Cir. June 14, 1999) (unpublished op.) ("The law regarding Sims' Eighth Amendment claim [that prison officials failed to protect him from an inmate assault] was clearly established at the time of the alleged actions." (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994))).

[28]    When the Plaintiff described the medical allegations, he did not refer to anything that Mr. Locke had done or failed to do. *See* Second Amended Complaint at p. 5. But Mr. Davis apparently intended to include Mr. Locke as a defendant on the medical claims. *See id.* at p. 3 (alleging that the Plaintiff's medical needs had been disregarded by Mr. Locke).

*See* Second Amended Complaint at p. 5.  The other concerns the lack of subsequent treatment for complications arising from a broken nose.  *See id.* at p. 6.

Mr. Locke presents evidence that Mr. Davis had not filed any grievances concerning these matters.  *See* Defendants' First Dispositive Motion, Exh. 5 at p. 3; Defendant's, Oklahoma County, John Whetsel, & Brian Locke, Supplement to Doc. 13-8, Exh. at p. 2 (Feb. 23, 2009).  The Plaintiff acknowledges this argument, but fails to offer any evidence that he had completed the administrative process on his medical claims.  *See* Plaintiff's Response at p. 11 (stating that he had filed a request to staff, but failing to address the lack of a grievance on the medical issues).

Mr. Davis did state under oath that he had filed a grievance.  *See supra* p. 19.  The actual grievance, however, is not part of the record and Defendant Locke states that he is unaware of one.  As a result, the only evidence of the contents is the Plaintiff's description of the grievance.  And in a request to staff, Mr. Davis stated that he had "turned in . . . a grievance . . . concerning three I/Ms that assaulted me."  Second Amended Complaint, Exh. 8 at p. 2.

The evidence would support a finding that Mr. Davis had either failed to submit a grievance or had submitted one concerning the inmate assault.  *See supra* pp. 19-20.  But there is no evidence of a grievance covering the alleged deficiencies in the medical treatment.  Thus, Mr. Davis has not exhausted the administrative process on the medical claims.[29]  In

_____

[29]    *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (*dicta*) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under

these circumstances, Defendant Locke is entitled to summary judgment on the allegations concerning inadequate medical treatment.

## SUMMARY OF RECOMMENDATIONS

The Court should grant dismissal to Oklahoma County, to Mr. Whetsel in his individual and official capacities, and to Mr. Locke in his official capacity.

On Mr. Davis' personal capacity claim against Mr. Locke for failure to provide protection, the Court should:

- reject the argument for dismissal or summary judgment concerning timeliness of the claim arising out of the alleged assault on September 24, 2006,

- reject the argument for dismissal or summary judgment predicated on a failure to exhaust administrative remedies,

- grant Mr. Locke's motion to dismiss claims involving assaults prior to September 24, 2006, based on timeliness, and

- reject the arguments for dismissal based on failure to state a valid claim, frivolousness, and qualified immunity.

The Court should grant summary judgment to Mr. Locke on the personal capacity claim involving deliberate indifference to medical needs. This claim was unexhausted.

## NOTICE OF THE RIGHT TO OBJECT

The parties can object to the present report and recommendation. Any such objection must be filed with the Clerk of this Court by July 20, 2009. *See* W.D. Okla. Local Civil Rule

---

[the Prison Litigation Reform Act] for failure to exhaust his administrative remedies.")

72.1.   The failure to timely object would foreclose appellate review of the suggested rulings.[30]

STATUS OF THE REFERRAL

The referral is not terminated.

Entered this 29th day of June, 2009.

_Robert E. Bacharach_

Robert E. Bacharach
United States Magistrate Judge

---

[30]     *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").